National Holding Company, to use, v. Real Estate-Land Title & Trust Co. et al.

*Hirsh W. Stalberg*, for plaintiff; *Earl G. Harrison*, for defendant.

KUN, J., February 4, 1935.—This is an interpleader. The parties waived a jury trial.

In March of 1929 Harry Newman, the owner of property at Fifty-second and Chestnut Streets, Philadelphia, leased it to McCrory Stores Corporation for a term of 30 years from October 1, 1930. The lease provided for the erection upon the demised premises of a building to cost not less than $90,000. Within 60 days after the execution of the lease, the tenant was to submit to the landlord full plans and specifications for the erection of the building. Upon presentation of said plans and specifications the landlord obligated himself to deliver to the tenant a satisfactory bond guaranteeing that at the time possession of the demised premises was taken by the tenant, the landlord would deposit $90,000 in a Philadelphia bank, which $90,000 was to be paid out from time to time for the cost of construction of the building on architects' certificates. In addition payments out of the fund were to be made for fees, taxes and fire insurance. In the event that the amount deposited should be insufficient to complete the building the tenant was to pay said deficiency. In the event that any balance of the $90,000 remained, it was to be paid to the landlord.

On March 20, 1929, Harry Newman assigned the lease to Monarch Realty Corporation. Although so dated the assignment was not executed until some time subsequent to May 9, 1929.

On June 5, 1929, title to the demised premises was conveyed in fee to said

Monarch Realty Corporation, which acquired and held legal title to the premises for the benefit of National Holding Company, the legal plaintiff in this suit.

On June 5, 1929, the date when Monarch Realty Corporation acquired legal title to the premises, the said sum of $90,000, being money of the National Holding Company, was deposited with the Real Estate-Land Title and Trust Company for the benefit of said National Holding Company, the real owner of the premises.

On July 10, 1929, Monarch Realty Corporation assigned the lease to the said National Holding Company and conveyed the premises to it in fee.

On the same day National Holding Company assigned the lease and conveyed the demised premises to H. LeRoy Webb in fee. Webb and an assignee of Webb held title to the premises and the lease for the benefit of Southeastern Investment Trust, Inc., the defendant in the interpleader proceedings before us.

By a series of letters beginning May 9, 1929, and ending June 5, 1929, the Real Estate-Land Title and Trust Company agreed to pay to the Monarch Realty Corporation interest on the deposit of $90,000 at the rate of 4 percent on the net balances.

A controversy arose between the plaintiff and defendant with respect to the sum of $4,590.68 interest accrued on said $90,000. This has been paid into court by the bank. The use plaintiff in the proceedings is one Oliver Knight, assignee of National Holding Company, and the defendant is the aforesaid Southeastern Investment Trust, Inc.

The lease defines the word "landlord" as follows:

"The word 'landlord' shall include the owner as well as his, her, its or their heirs, executors, administrators, successors and assigns each of whom shall have the same rights, remedies, powers and privileges as are hereunto given unto landlord as though he, she, it or they originally signed this lease as landlord, including a right to proceed in his, her, its or their own name to enter judgment by confession or otherwise."

The lease provided that:

"All interest allowed on the deposit shall be paid to landlord."

Defendant, assignee of the lease and the reversion claims the interest fund on the theory that the interest was to be paid to the "landlord"; that the lease defines "landlord" to include the assignee thereof; that the assignment of the lease and the reversion to said defendant was all-inclusive; so that it is entitled to the fund.

Plaintiff argues that the agreement to pay interest was one between the bank and the Monarch Realty Corporation and was created outside of the lease; that the provision in the lease regarding the payment of interest to the landlord was entirely collateral to the lease.

It is quite clear to us that the defendant cannot have such right merely because it became the assignee of the reversion.

Prior to the passage of the statute in 32 Henry VIII the benefit or burden of covenants in a lease did not run with the reversion. The occasion for the passing of this statute was the large transfer of reversionary interests which followed when the monasteries were dissolved and the King donated the reversions to various persons. The statute provided that the grantees of reversions should have the same rights against the lessees and their assignees as the original lessors had; and that lessees and their assignees should have the same rights as against the assignees of the reversion as said lessees and their assignees had had against the original lessor. This made a wholly new departure in

the law of landlord and tenant. The statute contained no definition as to the kind of covenants which were to run with the reversion. This was left to the courts. The first important decision which considered this question was Spencer's case, 77 English Reprints 72 (1583). This held, according to Holdsworth, infra, that "If the covenant touched or concerned the estate in the land demised or something actually on it, not only the benefit, but also the burden of it, ran with that estate. . . . If, however, the covenant related to something to be newly done on the land demised there was nothing in being to which the covenant could be annexed. . . . It is obvious that neither principle touches covenants merely collateral, i. e., those which have no reference to the land demised. Such covenants therefore can never run with the land." See discussion on the statute in 32 Henry VIII and covenants, in 7 W. S. Holdsworth, "The History of English Law", 287-290.

Strictly speaking, covenants running with the land relate to rights and obligations arising between the grantee of the reversion or assignee of the lease and the tenant or his assignee. In this case the controversy is not of that kind, but is one between the assignee of the reversion and lease and its assignor.

We then come to the question as to whether the assignee became entitled to the interest, as against its assignor, by reason of the assignment of the lease and the transfer of the reversion to the assignee.

From an examination of the record in this case it is apparent that the arrangement whereby the bank agreed to pay interest on the $90,000 fund was created by contract (a series of letters) with the Monarch Realty Company, and not by the lease. The bank was not a party to the lease. The lease was a contract between the landlord and the tenant and provided that all interest allowed on the deposit should be paid to the landlord. This cannot create any rights in the assignee of the landlord. As respects said assignee the reference in the lease to interest is surplusage. The right of the Monarch Realty Company and the real party in interest, National Holding Company, to receive the interest was a matter apart from the lease created by separate contract with the bank.

The landlord was under no obligation to put up the money until October 1, 1930, instead it paid over the fund to the bank in June of 1929. Obviously, therefore, the fund was put up not under the lease, but under a collateral arrangement in advance of the time when it was required to be put up by the lease; and it was an incident of this advance collateral arrangement that interest was to be paid on unexpended balances to the depositor, the landlord at the time. The payment of interest on the fund had no relation to the leasehold as an estate or interest in land. The agreement for the payment of interest was between the bank and the plaintiff. There was never any privity between the defendant and the bank on the subject.

The defendant lays great stress on the provisions of the lease quoted above, defining the word "landlord" as extending to assigns and the provision for the payment of interest allowed on the deposit to the landlord. An assignee of a lease, however, does not necessarily acquire every possible right that the assignor had under the lease by the mere assignment of it. The definition of the word "landlord" in the lease in question does not, in our opinion, enlarge the rights of the defendant assignee thereof beyond that which would be construed by law to pass by an assignment in the absence of further specification.

The general rule on the subject is stated in 35 C. J. 1217, sec. 546, as follows: "Where a condition inserted in the lease is not intended for the benefit of the lessor as owner of the reversion in the property leased, it does not pass to the

grantee of the reversion, but remains in the grantor." Certainly the provision for the payment of interest on the fund to the landlord in this case was in no sense intended for the benefit of the lessor as owner of the reversion in the property leased, for such provision had no inherent relation to the ownership of the property. The provision for the payment of interest to the landlord or lessor was not for his benefit as owner of the reversion in the property leased, but rather as the depositor of the fund of money which he placed with the bank, the obvious consequence being that the one who actually made the deposit of the money should be entitled to any interest accruing on such deposit unless he quite definitely and specifically assigned his right to such deposit of money or the interest accruing thereon, which, of course, is not present in this case, the claim of the defendant to the fund resting merely on the general assignment of the lease to it.

As stated in Corpus Juris, supra, there may be conditions inserted in a lease which do not pass to the grantee of the reversion. Likewise there may be rights or conditions in a lease in favor of the lessee therein which do not pass to the assignee of such lessee. Such an instance may be found in the case of Hahn v. Ditchey, 7 D. & C. 109. In that case the landlord agreed to pay the tenant $2,000 upon the expiration of the lease and surrender of the property. The tenant assigned the lease to Hahn, who at the expiration of the lease, sued the landlord for the $2,000. The court held that this was a personal covenant not running with the land and did not pass to Hahn, the assignee of the lease. In Lowry v. Atlantic Coal Co., 272 Pa. 19, it was held that a covenant by a lessee in a lease not to assign the lease without the written consent of the owner was a personal covenant which did not run with the land, and when the lessee made an assignment with the consent of the owner, then his assignee could in turn assign the lease without the consent of the owner.

It has been held that an assignee of a lease acquires no right to a deposit given by the original lessee to secure performance of the lease, in the absence of a specific assignment of such deposit. See McAdams, "Landlord and Tenant," (Ambert's 5th ed.), 1022, and cases there cited. It has likewise been held that a covenant to return a fund deposited as security does not run with the land, so that the assignee of the tenant cannot recover the amount of the deposit from the grantee of the landlord. See the same authority at page 598. In other words, such rights, conditions, and provisions are not inherently related to the matter of ownership of the reversion or of the leasehold, but are considered as personal covenants which do not pass by mere assignment of the leasehold or of the reversion. There must be a specific assignment of the fund in question to give the assignee any right thereto.

Aside, therefore, from the significant point in the instant case that the right to interest on the deposit was really created by contract between the bank and the plaintiff, the original landlord, we hold that even if we consider the deposit in the case to have been made directly under the lease, the right to the interest on such deposit did not pass to the defendant under the assignment of the lease to it, in the absence of a specific assignment of such interest.

Before rendering our adjudication, we had the thought that in connection with the sale of the property from the plaintiff to the defendant and the assignment of the lease there may have been some disposition of the accumulated interest in the way of an adjustment thereof, as other items are usually adjusted at settlements between parties, which would indicate how the parties in such settlement treated the subject. We were advised by counsel that nothing was done about the matter between the parties, the accumulated interest item

having been overlooked, so that we could get no light on the subject from that source. We have accordingly settled the question according to the legal principles set forth.

The court adjudicates the cause as follows:

(1.) The assignment of the lease of March 19, 1929, by National Holding Company to Southeastern Investment Trust, Inc., did not carry with it any right to interest on the fund of $90,000 deposited by National Holding Company with the Real Estate-Land Title and Trust Company, or to any part of said interest, nor did any sale of the real estate demised in such lease carry said right with it.

(2.) Oliver Knight, use plaintiff herein, is entitled to recover the sum of $4,590.68 paid into court by the Real Estate-Land Title and Trust Company in the interpleader proceedings herein.